## UNITED STATES DISTRICT COURT

_____ NORTHERN _____ DISTRICT OF __ ILLINOIS, EASTERN DIVISION __

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | **FILED**<br>July 1, 2008<br>JUL - 1 2008<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT | **CRIMINAL COMPLAINT**<br>**UNDER SEAL**<br><br>CASE NUMBER:<br>MAGISTRATE JUDGE COX<br>**08 CR 522** |
| v. | | |
| BENJAMIN GONZALEZ | | |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about June 26, 2008 in _____ Cook _____ County, in the _____ Northern _____ District of _____ Illinois _____ , and elsewhere, defendant(s) did,

knowingly and intentionally possess with intent to distribute a controlled substance, namely, 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title __ 21 __ United States Code, Section 841(a)(1).

I further state that I am a Special Agent, Drug Enforcement Administration and that this complaint is based on the following facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof:  __x__ Yes     ____ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

July 1, 2008                                              at Chicago, Illinois
Date                                                       City and State

Hon. Susan E. Cox, U.S. Magistrate Judge               _____
Name & Title of Judicial Officer                        Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, David Brazao, having been duly sworn, state as follows:

1. I am a Special Agent with the United States Drug Enforcement Administration (DEA), Chicago Field Division, where I have worked since 1999. Prior to my employment with DEA, I worked for the U.S. Border Patrol starting in 1996. I am currently assigned to Enforcement Group 22, where my responsibilities include investigating violations of federal and state narcotics laws.

2. The information contained in this affidavit is based upon my own observations and discussions that I have had with other individuals — both law enforcement and non-law enforcement — as well as my training and experience. The following summary of certain facts is submitted for the limited purpose of establishing probable cause in connection with the complaint to which this affidavit is attached. I have set forth only the facts that I believe are necessary to establish probable cause in this matter. This is not a complete statement of all that I know about Benjamin GONZALEZ or the events described in this affidavit. The telephone calls summarized below were all monitored by me or other law enforcement personnel. The descriptions below are not intended to be verbatim transcripts.

3. On or about June 24, 2008, a DEA Cooperating Defendant (CD) stated that he/she could purchase between one to four kilograms of cocaine from an individual only know to him/her as "PAPAS." Agents later identified "PAPAS" as Benjamin GONZALEZ. The CD has been charged with violating the federal narcotics laws and appeared for his/her Initial Appearance on June 27, 2008. The CD is cooperating in the hopes of obtaining a reduced sentence in his/her criminal case. The CD has a criminal history which includes convictions for possession and distribution of

narcotics.

4.     At approximately 9:13 p.m. on June 24, 2008, after the CD's own arrest and while the CD was cooperating, the CD contacted GONZALEZ on a recorded telephone call and ordered four kilograms of cocaine. GONZALEZ stated that he (GONZALEZ) did not have any left because he (GONZALEZ) just sold thirty (kilograms of cocaine). GONZALEZ also told the CD that he only had "pieces" (the CD understood this to mean ounces of cocaine). GONZALEZ further stated that he would contact the CD when the cocaine arrived.

5.     On or about June 25, 2008, at approximately 1:03 p.m., on a recorded telephone call, the CD, while cooperating, contacted GONZALEZ and arranged the purchase of one kilogram of cocaine. GONZALEZ told the CD that he (GONZALEZ) had what he owed him (two ounces of cocaine) and one (kilogram of cocaine) for $17,000. The CD and GONZALEZ agreed to meet at the 7-11 convenience store at the intersection of 59th Street and Pulaski Boulevard, Chicago, Illinois.

6.     At approximately 2:00 p.m., agents of Enforcement Group 22 established surveillance at the aforementioned location. Additionally, agents searched the CD and his/her vehicle for contraband which yielded negative results. The CD was given an audio recording device.

7.     At approximately 2:15 p.m., agents observed GONZALEZ arrive at the location to meet with the CD. A short time later, GONZALEZ left the area in his vehicle. Agents then met with the CD and recovered approximately two ounces of cocaine delivered by GONZALEZ.

8.     On or about June 26, 2008, the CD had several consensually recorded conversations with GONZALEZ. During these conversations, the CD and GONZALEZ discussed the purity of the cocaine and the weight. The calls listed below are samples taken from several recorded cellular telephone calls between the CD and GONZALEZ.

9. At approximately 12:30 p.m. on June 26, 2008, on a recorded telephone call, the CD ordered one kilogram of cocaine from GONZALEZ. GONZALEZ stated that the kilograms are "open" (the CD understood this to mean that the cocaine was not in brick form) and would cost $17,000 per kilogram. GONZALEZ told the CD that he had two like that and to see what the CD could do with them. The CD then told GONZALEZ to bring the two kilograms.

10. At approximately 2:43 p.m., the CD contacted GONZALEZ on a recorded telephone call, and they agreed to meet at a laundry mat located near 25th Street and Kedize Avenue, Chicago, Illinois. The CD asked GONZALEZ whether he (GONZALEZ) had "two" (kilograms of cocaine) and GONZALEZ stated "yes."

11. On or about June 26, 2008, at approximately 3:00 p.m., agents from Enforcement Group 22 established surveillance at the aforementioned location for the purpose of arresting GONZALEZ.

12. At approximately 3:20 p.m., at the aforementioned location, agents arrested Benjamin GONZALEZ with approximately two kilograms of cocaine and approximately $6,000 United States Currency on the passenger-side floor of his automobile. A field test was positive for cocaine.

13. At approximately 3:30 p.m., GONZALEZ was read his Miranda Warnings via DEA form 13A. GONZALEZ stated that he understood his rights and agreed to speak with agents.

14. GONZALEZ admitted, among other things, that he started selling cocaine approximately three months ago, and that, approximately two months ago, he began to receive approximately two to four kilograms of cocaine a week.

15. GONZALEZ further stated that he delivered four ounces of cocaine approximately two days ago (June 24, 2008) to an individual only known to him as "Woody," and that he delivered

another two ounces of cocaine to "Woody" on June 25, 2008. GONZALEZ stated that he was supposed to deliver the entire six ounces of cocaine to "Woody" on June 24, 2008, but did not have the entire amount ready. GONZALEZ stated he was attempting to deliver the two kilograms of cocaine to "Woody" the day he was arrested.

FURTHER AFFIANT SAYETH NOT.

David Brazao
Special Agent
U.S. Drug Enforcement Administration

Signed and Sworn before me
This 1st day of July, 2008.

Susan E. Cox
United States Magistrate Judge